[Cite as *In re I.B.L.*, 2014-Ohio-4666.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

IN THE MATTER OF:       :

               :

   I.B.L.                  :       Case No. 14CA19

               :

               :

               :       <u>DECISION AND JUDGMENT</u>

               :       <u>ENTRY</u>

               :

               :       **Released: 10/16/14**

APPEARANCES:

Joseph H. Brockwell, Marietta, Ohio, for Appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Amy Graham, Assistant Prosecuting Attorney, Marietta, Ohio for Appellee.

McFarland, J.

{¶ 1} Appellant, A.L., appeals the trial court's judgment that awarded appellee, Washington County Children Services (WCCS), permanent custody of her five-year-old biological child, I.B.L. Appellant argues that the trial court violated her due process rights by rejecting her motion to be transported from prison for the permanent custody hearing. We do not agree. The trial court afforded appellant the opportunity to present her testimony via deposition, and appellant submitted an affidavit that contained her version of events. Additionally, appellant's counsel meaningfully

participated during the permanent custody hearing and represented appellant's interest. Consequently, the trial court did not violate appellant's due process rights. Therefore, we overrule appellant's sole assignment of error and affirm the court's judgment.

## I. FACTS

{¶ 2} On June 18, 2012, Washington County Children Services filed a neglect and dependency complaint concerning appellant's child. The complaint alleged that the Washington County Sheriff's Office requested WCCS's assistance after appellant's paramour was found dead of a drug overdose. The responding WCCS caseworker observed several safety hazards in the home: (1) the electrical service panel "was wide open with exposed wires and within reach" of the child; (2) "receptacles on the wall were not covered and contained exposed wiring[;]" (3) "[t]here was an open utility knife sitting on the floor next to the child's toys[;]" and (4) "the home ha[d] holes in the floor that the child could fall through." The caseworker also expressed a concern that "drugs [were] being abused by the adults in the home" while the child was present. The caseworker noted that the child appeared "unclean, with dirt on his knees, legs, and hands." The trial court subsequently placed the child in WCCS's temporary custody.

{¶ 3}  On August 15, 2012, appellant admitted that the child is a dependent child.  The court thus adjudicated the child dependent and dismissed the neglect allegation.  The court continued the child in WCCS's temporary custody.

{¶ 4}  On February 24, 2014, WCCS filed a permanent custody motion.  The motion alleged that the child had been in its custody for more than twelve of the past twenty-two months and that awarding it permanent custody would serve the child's best interest.

{¶ 5}  On April 2, 2014, appellant filed a motion that requested the court to enter an order of transportation from the Ohio Reformatory for Women in Marysville, Ohio, so that she could attend the permanent custody hearing.  The trial court denied her motion.  The court applied the *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), balancing test and determined that "the risk of an erroneous deprivation of the mother's parental rights * * * would appear to be fairly low" if she is not transported for the hearing.  The court observed that counsel represented appellant, counsel could protect appellant's interests, and appellant could testify through the use of a deposition.  The court additionally determined that transporting appellant from prison "will cause the county to incur significant expense which can be avoided by the taking of * * * her

deposition in prison and submitting it to the Court during the hearing. The

use of depositions would clearly serve the State's goal and the child['s]

interest and it would not impose any undue fiscal or administrative burden

on the state." The court thus denied appellant's motion for transport and

stated that appellant's counsel "may take and preserve her testimony for the

Permanent Custody hearing by the use of a deposition taken in prison or

through the submission of a notarized affidavit."

{¶ 6} On April 24, 2014, appellant filed an affidavit. In it, she

outlined her version of the circumstances surrounding the child's initial

removal, her subsequent experience with WCCS, and her compliance with

the case plan.

{¶ 7} On April 28, 2014, the guardian *ad litem* filed a report and

recommended that the court award WCCS permanent custody of the child.

The guardian *ad litem* explained:

> "[Appellant] loves her child and her child is attached to her.
> However, [appellant] has not been consistent in her visitations with
> [the child] which has left [the child] disappointed on several
> occasions. [Appellant] has had difficulty securing and maintaining
> stable housing for [the child]. While living with [appellant], [the
> child] lacked the security and consistency of a nurturing home and a
> parent who was focused on his needs and development. In the
> absence of the mother and her lifestyle, [the child's doctor] noted this
> child has made significant progress and there is no longer a concern
> that this child might be autistic. This GAL was assigned this case on
> June 19, 2012. Since that time, the mother has not made any
> significant changes in her lifestyle. She likes being transient, but that

is not in the best interests of [the child]. The mother is now incarcerated, and this child has been in the foster care system for almost 2 years."

{¶ 8} On May 5, 2014, the trial court held a hearing to consider WCCS's permanent custody motion. Before the hearing began, the court noted that appellant was not present due to her incarceration.

{¶ 9} On May 6, 2014, the trial court granted WCCS permanent custody of the child. The trial court found that the child had been in WCCS's temporary custody for more than twelve of the past twenty-two months pursuant to R.C. 2151.414(B)(1)(d). The court noted that the child was initially removed from the home twenty months before WCCS filed the permanent custody motion and that the mother had not seen the child since July 6, 2013, when she was incarcerated. The court also found that awarding WCCS permanent custody would serve the child's best interest.

> "The court finds that all of the child's needs are being met by his foster family and he is doing well in their home. The child needs stability, and a safe, loving environment. He needs a secure permanent placement. Neither parent can provide this. The mother is presently incarcerated until July 2015. The mother has not seen the child since her incarceration in July 2013. The father has not had any involvement with the child. Permanency and stability cannot be achieved without a grant of permanent custody. The foster family has had the child for 23 months. The child's Guardian Ad Litem supports the motion for permanency and believes the motion for permanent custody should be granted."

{¶ 10} This appeal followed.

## II.  ASSIGNMENT OF ERROR

{¶ 11}  Appellant raises one assignment of error:

The appellant, mother of the child, was deprived of her constitutional right of due process under the Fourteenth Amendment to the United States Constitution and—of the Ohio Constitution when the trial court would not allow her to attend and participate in the permanent custody hearing.

## III.

## ANALYSIS

{¶ 12}  In her first assignment of error, appellant argues the trial court violated her due process right by denying her request to be transported from prison to the permanent custody hearing.

{¶ 13}  A prisoner does not have "an absolute due process right to attend the trial of a civil action to which he is a party.  Any such right must be balanced against the state's interest in avoiding the risks and expenses of transportation.  *Abuhilwa v. Board*, 4th Dist. Pickaway No. 08CA3, 2008-Ohio-5326, ¶7.  In evaluating the due process right of an incarcerated parent to be present at a permanent custody hearing, this court and others have applied the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  *In re Elliot*, 4th Dist. Lawrence No. 92CA34 (June 25, 1993); *accord In re A.F.*, 6th Dist. Williams No. WM-13-007, 2014-Ohio-633, ¶19; *In re K.L.*, 10th Dist. Franklin Nos. 13AP-218

and 13AP-231, 2013-Ohio-3499, ¶43.  The *Mathews* test requires a court to evaluate three factors:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

{¶ 14}  In the case at bar, the private interest that will be affected by the permanent custody hearing is appellant's "essential" and "basic" civil right to raise her child.  *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990).  A parent's fundamental liberty interest in the care, custody and management of a child "does not evaporate" simply because the parent has not been a "model" parent or "lost temporary custody of their child to the state."  *Elliot*, *supra*, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

{¶ 15}  Second, the risk of an erroneous deprivation of appellant's fundamental liberty interest in the care, custody, and management of her child by holding the permanent custody hearing in her absence appears low. Appellant's counsel fully participated in the permanent custody hearing and

represented appellant's interest.  Additionally, the trial court allowed

appellant to submit her testimony via deposition.  Appellant apparently

decided not to be deposed, but instead, chose to submit an affidavit.  Thus,

appellant had an opportunity to present her version of events to the trial

court.

{¶ 16}  Next, we consider the state's interest.  In *Elliot, supra*, we

identified "[t]wo state interests [that] are at stake in a permanent custody

proceeding—a *parens patriae* interest in preserving and promoting the

welfare of the child and a fiscal and administrative interest in reducing the

cost and burden of such proceedings."  *Id.*, citing *Santosky,* 455 U.S. at 766.

"In a permanent custody proceeding, the state's *parens patriae* interest is

served by procedures that 'promote an accurate determination of whether the

natural parents can and will provide a normal home.'"  *Id.*, quoting *Santosky*,

455 U.S. at 767.  Thus, in *Elliot*, we stated:

> "Permitting [appellant] to be present would be the optimal
> arrangement.  However, allowing some other means of presenting his
> testimony would clearly serve the state's goal and the children's
> interest, and it would not impose any undue fiscal or administrative
> burden upon the state.  The trial court did not err in overruling
> [appellant's] motion to be present at the hearing.  * * *."

{¶ 17}  Similarly, in the case at bar, permitting appellant to attend the

permanent custody hearing would be the optimal arrangement.  However,

permitting appellant to present her testimony via other means "clearly

serve[s] the state's goal and the children's interest, and it would not impose any undue fiscal or administrative burden upon the state." Consequently, a balance of the *Mathews* factors shows that the trial court did not deprive appellant of her due process rights by rejecting her request to be transported from prison so that she could attend the permanent custody hearing.

{¶ 18} Moreover, we have previously concluded that "[a] trial court possesses discretion to proceed with a permanent custody hearing in a parent's absence." *In re A.C.H.*, 4th Dist. Gallia No. 11CA2, 2011-Ohio-5595, ¶46, citing *In re S.G.,* 2nd Dist. Greene No. 2009-CA-46, 2010-Ohio-2641, ¶22. In *A.C.H.*, we determined that the trial court did not deprive the parent of his due process rights by holding the permanent custody hearing in his absence when "[c]ounsel meaningfully represented appellant at the hearing, a complete record was made, and appellant * * * failed to show what testimony or evidence he would have offered that would have changed the outcome of the case." *Id.* at ¶46.

{¶ 19} The same scenario applies in the case *sub judice*. Counsel meaningfully represented appellant at the hearing, a complete record was made, and appellant has failed to show what additional testimony or evidence she would have offered that would have changed the outcome of the case. Furthermore, appellant submitted her testimony via affidavit.

{¶ 20}  Accordingly, based upon the foregoing reasons, we overrule

appellant's sole assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. and Hoover, J.: Concur in Judgment and Opinion.


For the Court,


BY:    _____
       Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**