[Cite as *In re R.B.*, 2019-Ohio-3469.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: R.B., E.B., M.B., D.B. | : | APPEAL NOS. C-190319 |
| | | C-190331 |
| | : | TRIAL NO. F08-0417Z |
| | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 28, 2019

*Anzelmo Law* and *James A. Anzelmo,* for Appellant Mother,

*Phyllis Schiff, In re Williams* Attorney for D.B.,

*Roberta Barbanel, In re Williams* Attorney for M.B., E.B., and R.B.,

*Mark Fidler*, for C.S., Father of D.B.,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Nick Gramke*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Geoffrey W. Pittman,* Attorney Guardian ad Litem for D.B.,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan Bussam*, Assistant Public Defender, Appellee Guardian ad Litem for M.B., E.B., and R.B.

ZAYAS, **Judge.**

{¶1}    Mother and her son, D.B., each appeal from a judgment of the Hamilton County Juvenile Court that terminated mother's parental rights and placed D.B., along with his half-siblings M.B., E.B., and R.B., in the permanent custody of the Hamilton County Department of Job and Family Services ("HCJFS").  For the reasons that follow, we affirm the juvenile court's judgment.

## I.  Background and Procedural History

{¶2}    As relevant to this appeal, mother is the biological mother of D.B., M.B., E.B., and R.B. (collectively, the "B-B children").  C.S. is the father of D.B, while R.B. is the father of M.B., E.B., and R.B.  Mother remains married to R.B., but she and the children have had no contact with him, and he does not provide child support.

{¶3}    HCJFS opened a case against mother in December 2014 after receiving allegations that her children were living in hazardous conditions in a dirty home without adequate supervision.  In June 2015, HCJFS sought and received interim custody of the B-B children, and the juvenile court adjudicated them dependent and neglected.  In January 2017, after mother completed her case plan, the children were returned to her care under orders of protective supervision.  The protective orders were then terminated in March 2017.

{¶4}    In September 2017, HCJFS again sought interim custody of the B-B children after receiving allegations that the children were not adequately supervised. Mother had the children's grandfather caring for them most of the time, but he could not control them or stop them from fighting and injuring each other.  HCJFS's motion for interim custody was held in abeyance pending further hearings.

{¶5}   In October 2017, HCJFS filed an emergency order of protection after receiving allegations that D.B. had raped E.B.  HCJFS also sought and received interim custody of the B-B children.  On October 30, 2017, HCJFS filed an amended complaint for permanent custody of the B-B children.

{¶6}   Hearings on permanent custody took place before a magistrate in March, April, July, and October of 2018.  Mother was sequestered from the courtroom for a portion of the hearings because of a serious medical condition.  She was able to participate instead via videoconference, while her attorney was present in the courtroom.

{¶7}   On October 15, 2018, the B-B children were adjudicated dependent and neglected.  E.B. was also adjudicated abused.  On February 1, 2019, the magistrate issued a decision, granting permanent custody to HCJFS.  Mother and D.B. filed timely objections to the magistrate's decision.  On April 26, 2019, the juvenile court overruled the objections, adopted and incorporated the magistrate's decision, and granted permanent custody of the B-B children to HCJFS.  On appeal, mother raises three assignments of error, while D.B. raises a single assignment of error.

{¶8}   Mother argues that the juvenile court erred in concluding that her children had been in the care of HCJFS for 12 months of a consecutive 22-month period, in sequestering her during the permanent custody hearing in violation of her due process rights, and in finding that clear and convincing evidence supported an award of permanent custody of her children to HCJFS.  In D.B.'s sole assignment of error, he argues that the juvenile court's findings with regard to his best interest were against the weight and sufficiency of the evidence.

## II. Legal Analysis

{¶9}   A juvenile court's determination on a motion for permanent custody must be supported by clear and convincing evidence.  *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46.  Clear and convincing evidence has been defined as evidence sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.  We must examine the record and determine if the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard.  *In re W.W.* at ¶ 46.  We will not reverse a juvenile court's decision on appeal where the court "correctly applied the best-interests test and where its custody decision was amply supported by competent evidence in the record."  *In re Allah*, 1st Dist. Hamilton No. C-040239, 2005-Ohio-1182, ¶ 11.

### A.  Permanent Custody

{¶10}  Ohio law provides two ways an agency may obtain permanent custody of a child.  The agency may first obtain temporary custody of the child and then file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint.  *See* R.C. 2151.413, R.C. 2151.27(C) and R.C. 2151.353(A)(4); *see also In re E.P.*, 12th Dist. Fayette No. CA2009-11-022, 2010-Ohio-2761, ¶ 22.  In this case, HCJFS filed for permanent custody as part of an original complaint.

{¶11}  In order to grant permanent custody as part of an original disposition, a juvenile court must apply a two-pronged test.  First, the court must determine that

4

the child cannot be placed with either parent within a reasonable time or should not be placed with either parent using the factors in R.C. 2151.414(E). Second, the court must determine that permanent custody is in the best interest of the child, using the factors in R.C. 2151.414(D). R.C. 2151.353(A)(4); *see In re T.K.K.*, 12th Dist. Butler No. CA2012-01-008, 2012-Ohio-3203, ¶ 22.

{¶12} Under the first prong, the agency is *not* required to demonstrate that the children have been in the temporary custody of one or more public children-services agencies or private child-placing agencies for 12 or more months of a consecutive 22-month period, as provided under the so-called "12 of 22" provision. In a request for permanent custody as part of an original complaint, the "12 of 22" provision is only relevant under the second prong when considering the best interests of the children.

### First Prong: Cannot or Should Not

{¶13} In her first assignment of error, mother argues that the judgment must be reversed because the juvenile court based its grant of permanent custody on an erroneous calculation of the "12 of 22" provision. HCJFS argues that while the court was incorrect in its calculation, the matter is irrelevant, because the provision does not apply to an original disposition for permanent custody and is not outcome-determinative, when the court also entered a finding that the B-B children could not be placed in the custody of a parent within a reasonable time or should not be returned to a parent. We agree with HCJFS.

{¶14} While it is true that the juvenile court erroneously applied the "12 of 22" provision, the error is not outcome-determinative because the juvenile court also found—using the factors in R.C. 2151.414(E)—that the B-B children could not and

should not be placed with either parent. *See In re A.M.*, 1st Dist. Hamilton No. C-190027, 2019-Ohio-2028, ¶ 19, citing *In re J.D.*, 8th Dist. Cuyahoga No. 106826, 2018-Ohio-4118, ¶ 34 (holding that error in the 12-of-22 determination was not outcome-determinative when the trial court made an alternate R.C. 2151.414(B)(1)(a) determination).

{¶15} As to mother, the juvenile court found under R.C. 2151.414(E)(1) that mother had failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home, and under R.C. 2151.414(E)(2) that mother had chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency so severe that it made her unable to provide an adequate permanent home for the children at the present time.

{¶16} The juvenile court found that the B-B children had previously been removed due to concerns over the deplorable conditions of their home and a lack of adequate supervision. To assist mother in remedying these problems, HCJFS offered cash assistance, daycare, an intensive in-home family reunification service, and homemaking services. However, the juvenile court found that mother's involvement in case-plan services had not eliminated the concerns regarding the children's safety and welfare. Additionally, mother refused to report any information regarding her employment or income, and she refused to engage in mental health and substance abuse treatment.

{¶17} The juvenile court found that the B-B children had serious emotional and behavioral needs related to their trauma that mother could not satisfactorily meet. The court also found that the children required stability, structure, and

security, which mother could not provide in a reasonable period of time. Major concerns indicated by the magistrate included mother's failure to appreciate the magnitude of her children's mental-health issues, mother's refusal to believe E.B.'s report of being raped by D.B., and mother's blame of E.B. for the removal of mother's children from her care. Specifically, the magistrate found,

> All of the B-B children are presently receiving mental health treatment. E.B., M.B., and R.B. [have been] diagnosed with post traumatic stress disorder (PTSD) and attention deficit hyperactivity disorder (ADHD). E.B. deals with depression. E.B. and M.B. struggle with anxiety. R.B. has a conduct disorder that encompasses fits and tantrums. He also steals. One symptom to R.B.'s PTSD is encopresis. D.B. is has been diagnosed with oppositional defiance disorder (ODD), and has displayed sociopathic tendencies. D.B. sexually abused a resident of the group home where he was placed after being removed from his home for sexually abusing his sister, E.B. E.B. reported that R.B. had also been sexually abused by D.B.

{¶18} The magistrate also noted that mother had required frequent redirection during her supervised visits with the children. Mother's last visit with E.B., M.B., and R.B. was in May 2018, following a therapeutic recommendation to terminate her visitation. During visits, mother showed E.B. pictures of D.B., and thereafter E.B. did not want to visit with her.

{¶19} Mother had visits with D.B. at a separate facility until her health issues prevented it. She went several months without visiting D.B. To that point, the magistrate found that mother had serious physical challenges which could negatively

7

impact her ability to care for her children. Mother was placed in a nursing home for months during the pendency of the case, and she needed the assistance of a wheelchair for court appearances. Mother reported that she was currently living in her three-bedroom mobile home and was struggling financially. She indicated that she was storing her household garbage in her shed because she could not afford the fees to have her trash removed.

{¶20} Following our review of the record, we find that the evidence, taken as a whole, supports the juvenile court's finding under R.C. 2151.414(E)(1) and (E)(2) as to mother.

{¶21} As to the fathers, the juvenile court found under R.C. 2151.414(E)(10) and (E)(4) that both fathers had abandoned their children and had demonstrated a lack of commitment toward reunification. With regard to the fathers' abandonment and lack of commitment, the juvenile court found,

> [R.B.] has had no involvement with the children, or HCJFS, since 2016. [R.B] has not financially supported his children, and is not a viable placement for them.
>
> [C.S.] is not involved with D.B. [C.S.] is a Tier 1 registered sex offender, having been convicted of sexual imposition in 2015. At the time of the hearing, [C.S.] was on probation for failing to properly verify his address. [C.S.] has not demonstrated an ability to meet [D.B.'s] needs, or a willingness to care for him.

Additionally, C.S. indicated through his attorney that he was in agreement with HCJFS's complaint for permanent custody of D.B. We, therefore, hold that the trial

court's findings under R.C. 2151.414(E)(10) and (E)(4) as to both fathers was supported by clear and convincing evidence.

{¶22} Because the juvenile court's finding that the children could not or should not be placed with either parent was supported by clear and convincing evidence, we overrule mother's first assignment of error.

### *Second Prong: Best Interest*

{¶23} We must next determine whether the court correctly determined the best interests of the children using the factors in R.C. 2151.414(D). The juvenile court determined that it was in the children's best interests to be placed in the permanent custody of HCJFS. In determining the best interest of a child, the juvenile court must consider all relevant factors, including, but not limited to, those expressly set forth in R.C. 2151.414(D)(1).

{¶24} The factors include (a) "[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers," (b) "[t]he wishes of the child," (c) "[t]he custodial history of the child," (d) "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency," and (e) "[w]hether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶25} In considering the best-interest factors, the juvenile court found that E.B., M.B., and R.B. had not visited with mother in several months and had no desire to return to her. Mother repeatedly told E.B. that she was to blame for their removal from her care, and mother displayed pictures of D.B. to E.B. despite the fact that it upset E.B. Mother sometimes claimed that she believed E.B. regarding the rape, but

9

other times characterized E.B.'s allegations as "confusion"—this is despite D.B. having admitted to raping E.B. and to raping his brother R.B. under similar circumstances.

{¶26} E.B., M.B., and R.B. were placed with a family friend and wished to remain in her care. The family friend expressed a desire to adopt them. E.B., M.B., and R.B. do not want any involvement with their half-brother, D.B. D.B. is in residential treatment, and HCJFS indicated that they would not place D.B. with his half-siblings. The guardian ad litem for E.B., M.B., and R.B. supported the commitment of permanent custody to HCJFS and indicated that they have spent the majority of the last five years in the custody of HCJFS.

{¶27} The guardian ad litem for D.B. also supported a commitment of permanent custody to HCJFS and indicated likewise that D.B. had been in the custody of HCJFS for 44 of the most recent 53 months. The guardian ad litem also noted that permanency for D.B. could only be achieved through out-of-home placement in a treatment facility due to his sexual predation and dysfunction and other diagnoses.

{¶28} The juvenile court found that the fathers, R.B. and C.S., had gone for extraordinary periods of time with no contact with their respective children and had legally abandoned them. The magistrate noted that the fathers have shown no interest in their children through their lack of engagement with HCJFS. And, as mentioned above, C.S. indicated through his attorney that he supported an award of permanent custody of D.B. to HCJFS.

{¶29} Finally, the court determined that the children needed a legally secure and safe placement and concluded that this type of placement could only be achieved through a grant of permanent custody to HCJFS.

{¶30} We find that the juvenile court correctly applied the best-interest test of the second prong of permanent custody as it applied to both fathers and mother. We therefore overrule D.B.'s sole assignment of error.

### B. Sequestration of Mother

{¶31} In her second assignment of error, mother argues that the juvenile court erred by sequestering her during the permanent-custody hearing in violation of her right to due process under the Fourteenth Amendment to the United States Constitution and Section 16, Article I, of the Ohio Constitution. We disagree.

{¶32} Mother was sequestered from the courtroom for a portion of the permanent-custody hearing because of a serious medical condition. She was infected with MRSA, and two of the attorneys taking part in the proceedings were immunocompromised. Mother was able to participate instead via videoconference, while her attorney was present in the courtroom. She was able to return to the courtroom after receiving treatment.

{¶33} Ohio courts have applied a balancing test to determine whether a parent's due-process rights are violated when the court proceeds with a hearing on a permanent-custody motion without the parent's presence. Specifically, a court should balance the factors established in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976): "(1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional procedural safeguards." *In re D.P.*, 8th Dist.

Cuyahoga No. 86271, 2006-Ohio-937, ¶ 22, quoting *In re Sprague*, 113 Ohio App.3d 274, 276, 680 N.E.2d 1041 (1996).

{¶34} In this case, the private interest affected by the permanent-custody hearing is mother's "essential" and "basic" civil right to raise her children. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). "A parent's fundamental liberty interest in the care, custody and management of a child does not evaporate simply because the parent has not been a model parent or lost temporary custody of their child to the state." (Internal quotations omitted.) *In re I.B.L.*, 4th Dist. Washington No. 14CA19, 2014-Ohio-4666, ¶ 14.

{¶35} Second, the risk of an erroneous deprivation of mother's fundamental liberty interest in the care, custody, and management of her children by holding the permanent-custody hearing in her physical absence while enabling her to participate via videoconference appears low. Mother's counsel fully participated in the permanent custody hearing and represented her interest. *See In re I.B.L.* at ¶ 15*; see also State ex rel. Vanderlaan v. Pollex*, 96 Ohio App.3d 235, 237, 644 N.E.2d 1073 (6th Dist.1994) (holding that mother, who was incarcerated during the permanent-custody hearing, did not have an absolute right to attend when her basic rights were protected by her attorney). Additionally, the juvenile court allowed mother to return to the hearing once she had received treatment and was no longer a danger to those in the courtroom who were immunocompromised. Thus, mother had an opportunity to present her version of events and to cross-examine witnesses at the hearing.

{¶36} In considering the state's interest, we identified "[t]wo state interests [that] are at stake in a permanent custody proceeding—a parens patriae interest in preserving and promoting the welfare of the child and a fiscal and administrative

interest in reducing the cost and burden of such proceedings." *In re I.B.L.* at ¶ 14, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Permitting mother to be physically present for the entirety of the hearing would have been the optimal arrangement. However, allowing some other means of her participation clearly served the state's and children's interests, and it did not impose any undue fiscal or administrative burden upon the state.

{¶37} Consequently, a balancing of the *Mathews* factors shows that the juvenile court did not deprive mother of her due-process rights by sequestering her for a portion of the permanent-custody hearing. Counsel meaningfully represented mother at the hearing during her physical absence, a complete record was made, and mother has failed to show how her physical presence would have changed the outcome of the case.

{¶38} Accordingly, based upon the foregoing reasons, we overrule mother's second assignment of error.

## Conclusion

{¶39} There is clear and convincing evidence in the record to support the juvenile court's decision to grant permanent custody of the B-B children to HCJFS. Therefore, we overrule mother's and D.B.'s assignments of error and affirm the judgment of the juvenile court.

Judgment affirmed.

**MOCK, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.