[Cite as *In re S.G.*, 2020-Ohio-5244.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

IN RE: S.G.

:  APPEAL NO. C-200261
   TRIAL NO. F18-1X

:

:  *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 10, 2020

*James A. Anzelmo,* for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Erica C. Bowen*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan E. Busam*, Assistant Public Defender, for Appellee Guardian ad Litem.

**MYERS, Presiding Judge.**

{¶1} Mother appeals the Hamilton County Juvenile Court's judgment granting permanent custody of her child to the Hamilton County Department of Job and Family Services ("HCJFS"). The child's guardian ad litem and HCJFS ask this court to affirm the juvenile court's judgment.

## I. Background and Procedural History

{¶2} Mother gave birth to S.G. on September 20, 2019. At the time, mother had another child, M.G., who was in the temporary custody of HCJFS due to mother's drug use. Mother and S.G. were drug-tested at S.G.'s birth because, although mother claimed to be drug-free, she reported that she had a history of cocaine and ecstasy use. Both mother and S.G. tested negative for illegal drugs. Because the child experienced difficulties during feedings, she was transferred to the NICU.

{¶3} On September 30, 2019, before S.G. was discharged from the hospital, HCJFS filed a motion for an interim order of custody and a complaint for permanent custody of S.G. At a hearing before a juvenile court magistrate that day, mother agreed to interim custody to HCJFS, so S.G. was placed in the same foster home as M.G., her brother. M.G. had been in the temporary custody of HCJFS since February 2018, and HCJFS's motion for permanent custody of M.G. was pending.

{¶4} Mother appeared at an adjudication hearing on November 7, 2019, and the matter was continued so that mother could complete random toxicology screens, complete an updated diagnostic assessment and follow recommendations, provide paystubs, and regularly visit S.G. On the same date, the magistrate continued the permanent-custody hearing for M.G. at mother's request so that she could participate in the process regarding the permanent surrender of M.G. Both the

adjudication hearing for S.G. and the permanent-custody hearing for M.G. were continued to December 6, 2019.

{¶5} Mother failed to appear at the hearings scheduled on December 6, 2019, without explanation. The magistrate continued the adjudication hearing for S.G. until January 8, 2020. As to M.G., the magistrate noted that mother did not execute a permanent surrender, and she proceeded with the permanent-custody hearing. Thereafter, the juvenile court granted HCJFS's motion for permanent custody as to M.G., and mother did not appeal the judgment.

{¶6} On January 8, 2020, mother appeared at the adjudication hearing related to S.G., and stipulated that Richard Johnson was S.G.'s father. The magistrate admitted into evidence HCJFS's exhibits, to which mother did not object. These exhibits included S.G.'s hospital records and copies of the magistrate's decisions regarding the juvenile proceedings for M.G. In addition, HCJFS submitted records of mother's 2018 indictment for aggravated trafficking in drugs (fentanyl) and trafficking in cocaine, her guilty plea to the trafficking-in-cocaine charge, and her sentence to three years of community control. The matter was continued to January 21, 2020, for the permanent-custody hearing.

{¶7} However, mother failed to appear at the hearing on January 21. Mother's counsel requested a continuance, stating that mother texted her to indicate that she was in the hospital with the flu and that she had been there since the previous day. When asked whether counsel had been able to verify that mother was in the hospital, counsel replied, "I did ask for verification; however, that was not provided." The magistrate denied the request for a continuance.

3

{¶8} Pam Smith, the family's HCJFS caseworker, testified that she had spoken to mother about the hearing the week before, and that mother had said she would attend.

{¶9} Smith testified that mother's case-plan services included drug screening, visitation with S.G., and obtaining stable housing and income. In addition, mother was ordered to complete an updated diagnostic assessment and to follow any recommendations from the assessment.

{¶10} Smith testified that mother lived with her grandfather and that the home was not stable. Smith said she had not been able to gain access to the home since S.G.'s birth. Smith testified that mother had told her months earlier that she received a housing voucher and that she would be seeking housing outside of her grandfather's home because she had no plans to remain there. However, mother continued to live with her grandfather.

{¶11} Smith said that in December 2019, she had referred mother for a drug test. When Smith spoke to mother about the results of the drug test, mother denied that she used marijuana and cocaine, but admitted to smoking marijuana about 20 days prior to the test. Mother said that she did not know "why her hair follicle [tests] keep turning up positive for cocaine * * * [because] she had not used cocaine in over a year."

{¶12} Smith testified that S.G. was thriving in the foster home with M.G. According to Smith, mother was not visiting regularly with S.G.

{¶13} S.G.'s foster parent testified that S.G. was placed into her home upon being discharged from the hospital. The foster parent reported that S.G. was very close to her brother M.G. and to both foster parents, and that the foster parents

wanted to adopt both S.G. and M.G. According to the foster parent, mother missed four out of 10 scheduled weekly visits with S.G.

{¶14} In addition, HCJFS moved into evidence the exhibits from the January 8, 2020 hearing, and counsel for mother did not object. Contained within the exhibits were the magistrate's prior decisions related to M.G. in the same case, which included:

(1) the magistrate's February 2018 decision, indicating mother stipulated that she had tested positive for cocaine at the birth of M.G. in September 2017 and that she had three positive drug screens in November 2017. In addition, the magistrate found that HCJFS had provided case-plan services to mother which involved case management, a safety plan, relative placement, visitation, diagnostic assessment, and substance abuse treatment. Mother stipulated to temporary custody of M.G. to HCJFS;

(2) the magistrate's June 2018 decision, in which the magistrate found that mother was incarcerated on the drug-trafficking charges and that she had not been compliant with case-planning efforts prior to her incarceration. At the time, M.G. was placed with a relative;

(3) the magistrate's November 2018 decision, in which the magistrate found that M.G. had to be moved from the relative's home to a foster home. Because mother had engaged in case-plan services, the magistrate ordered an extension of temporary custody to allow mother to continue to engage in services.

(4) the magistrate's March 2019 decision, in which the magistrate found that M.G. was stable in a foster home, that mother was visiting

with M.G., and that mother completed parenting education and outpatient substance-abuse treatment. The magistrate found that mother had had negative random toxicology screens and that a hair follicle test indicated cocaine use; and

(5) the magistrate's December 9, 2019 decision granting permanent custody of M.G. to HCJFS, in which the magistrate found that mother told Smith in October 2019 that she did not know why her recent toxicology screen was positive for cocaine and that mother failed to appear for a November 2019 toxicology screen. The magistrate found that mother's social media presence was observed by Smith to depict a promiscuous lifestyle that included drinking despite that mother was not yet 21 years old. The magistrate found that mother failed to provide proof of income. Mother had supervised visits with M.G. between December 2018 and May 2019, but she failed to visit M.G. between July and mid-October 2019. Then mother missed one of her two scheduled visits with M.G. before the December 6, 2019 hearing.

{¶15} At the conclusion of the January 21, 2020 hearing, the magistrate granted permanent custody of S.G. to HCJFS. Thereafter, the juvenile court overruled mother's objections and adopted the magistrate's decision. Mother now appeals.

## II. Mother's Absence from the Permanent-Custody Hearing

{¶16} In her first and second assignments of error, mother argues that the juvenile court erred by denying her counsel's request for a continuance and by proceeding with the permanent-custody hearing in her absence.

6

**{¶17}** When evaluating a motion for a continuance, a trial court should conduct "a balancing test which takes cognizance of all the competing considerations." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981); *In re J/B Children*, 1st Dist. Hamilton No. C-190651, 2020-Ohio-1085, ¶ 9. The court should consider, among other things:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [party] contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68. The denial of a continuance is within the trial court's discretion. *Id.* at 67.

**{¶18}** The record reveals that the juvenile court properly considered all relevant factors and did not abuse its discretion in refusing to grant a continuance. In considering mother's objection to the magistrate's denial of the continuance, the juvenile court noted that mother provided no proof that she had been hospitalized at the time of the hearing. The court noted that mother had failed to appear at the permanent-custody hearing for S.G.'s sibling that had been held the month before, and that mother had offered no explanation for that absence or contacted anyone involved in the case. In addition, the court noted that mother had a history of missed hearings in the case, and listed six such hearing dates. Based on the foregoing, the juvenile court did not abuse its discretion by denying mother's request for a continuance.

{¶19} In determining whether a parent's due-process rights are violated when the court proceeds with a permanent-custody motion without the parent's presence, we must balance the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976): (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value, if any, of other procedural safeguards, and (3) the state's interest, including the function involved and the fiscal and administrative burdens of additional procedural safeguards. *See In re R.B.*, 1st Dist. Hamilton Nos. C-190319 and C-190331, 2019-Ohio-3469, ¶ 33.

{¶20} Here, the private interest affected is mother's fundamental right in the care, custody, and control of her child. *Id.* at ¶ 34; *In re M/W*, 1st Dist. Hamilton No. C-180623, 2019-Ohio-948, ¶ 34. Because parental-termination cases have been likened to the family-law equivalent of the death penalty in a criminal case, "it is critical that the rights of a parent who faces the permanent termination of parental rights are appropriately protected." *In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, 95 N.E.3d 394, ¶ 1. Thus, parents have "a due process right to be present at permanent custody hearings." *In re M/W* at ¶ 35, quoting *In re J.W.*, 9th Dist. Summit No. 24924, 2009-Ohio-6957, ¶ 19-20. Mother was afforded the right to be present, but she did not avail herself of that right.

{¶21} Second, the risk of an erroneous deprivation of mother's fundamental interest in the care and custody of her child is low in this case because mother's counsel fully participated in the permanent-custody hearing and represented her interests. *See In re R.B.* at ¶ 35. Counsel had an opportunity to cross-examine witnesses at the hearing and to present mother's side of the case. *Id.*

{¶22} Third, we consider the state's interests in permanent-custody proceedings, which have been identified as "a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." *Id.* at ¶ 36, quoting *In re I.B.L.*, 4th Dist. Washington No. 14CA19, 2014-Ohio-4666, ¶ 16. In a permanent-custody proceeding, the state's interest is served by procedures that promote an accurate determination of whether permanent custody is in the best interest of the child. *In re I.B.L.* at ¶ 16, quoting *In re Elliot*, 4th Dist. Lawrence No. 92CA34, 1993 WL 268846 (June 25, 1993). While mother's presence at the hearing would have been desired, the denial of her request for a continuance advanced the fiscal and administrative interests in the proceedings, while also preserving the accurate determination of the merits of the case.

{¶23} Consequently, a balancing of the *Mathews* factors shows that the juvenile court did not deprive mother of her due-process rights by proceeding with the permanent-custody hearing in her absence. Counsel meaningfully represented mother at the hearing, a complete record was made, and mother has failed to show how her physical presence would have changed the outcome of the case. *See In re R.B.* at ¶ 37.

### III. Hearsay

{¶24} In her third and fourth assignments of error, mother argues that the trial court erred by admitting into evidence inadmissible hearsay. First, she argues that the magistrate should not have admitted mother's statements about the results of her drug tests when the results of the tests themselves were ruled inadmissible. However, Evid.R. 801(D)(2)(a) provides that a statement is not hearsay if it "is offered against a party" and is "the party's own statement." Mother is a "party" for

purposes of the permanent-custody hearing. *See* Juv.R. 2(Y) (defining "party" to include the parent of a child who is the subject of a juvenile court proceeding); *In re A.E.*, 10th Dist. Franklin Nos. 07AP-685 and 07AP-748, 2008-Ohio-1375, ¶ 48. Consequently, mother's statements which were offered against her in the permanent-custody hearing were admissible as nonhearsay statements under Evid.R. 801(D)(2)(a), so there was no error in allowing them. *See Matter of J.R.P.*, 2018-Ohio-3938, 120 N.E.3d 83, ¶ 49 (7th Dist.).

**{¶25}** Next, mother argues that the magistrate should not have allowed the caseworker to testify that mother had not been sober from December 2019 to the hearing on January 21, 2020, because the testimony referred to the drug-test results, which were not admitted into evidence. Even if it was error to allow this testimony, the error was harmless because the juvenile court did not rely on this testimony in its decision.

### IV. Defective Complaint

**{¶26}** In her fifth assignment of error, mother argues that the trial court erred by awarding permanent custody because HCJFS's complaint was defective. The complaint and amended complaint filed by HCJFS alleged that Richard Johnson was the father of S.G. Mother did not identify any other potential father for S.G., and in fact stipulated that Johnson was the father. Mother now argues that it was error not to have named "John Doe" in the complaint.

**{¶27}** Mother waived this argument by failing to timely raise it below. Juv.R. 22(D) provides that defenses or objections based on defects in the complaint or in the institution of the proceedings must be raised prior to the adjudicatory hearing. Juv.R. 22(D)(1) and (2). Mother did not raise any objection to the failure to name John Doe in the complaint until after S.G. was adjudicated dependent, and

10

consequently has waived the argument. *See In re D.D.*, 1st Dist. Hamilton No. C-190387, 2019-Ohio-4492, ¶ 19.

### V. Weight and Sufficiency

{¶28} In mother's sixth assignment of error, she argues that the juvenile court's judgment granting permanent custody was contrary to the weight of the evidence and was based upon insufficient evidence.

{¶29} A juvenile court's determination on a motion for permanent custody must be supported by clear and convincing evidence. *In re W Children*, 1st Dist. Hamilton No. C-180620, 2019-Ohio-690, ¶ 34. Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42. In reviewing a juvenile court's determination on a permanent-custody motion, we must examine the record and determine if the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard. *In re W Children* at ¶ 34. In reviewing a challenge to the weight of the evidence, we review the record to determine whether the trial court lost its way and created such a manifest miscarriage of justice in resolving conflicts in the evidence that its judgment must be reversed. *In re J.W. and H.W.*, 1st Dist. Hamilton No. C-190189, 2019-Ohio-2730, ¶ 13.

{¶30} A public children services agency may obtain permanent custody of a child in one of two ways: (1) the agency may first obtain temporary custody of the child and then file a motion for permanent custody under R.C. 2151.413, or (2) the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint under R.C. 2151.27(C). *In re R.B.*, 1st Dist. Hamilton Nos. C-190319 and C-190331, 2019-Ohio-3469, at ¶ 10.

{**¶31**} The juvenile court may grant permanent custody of a child to an agency that filed an R.C. 2151.413 motion to modify temporary custody to permanent custody if the court determines by clear and convincing evidence (1) that one of the factors in R.C. 2151.414(B)(1)(a) through (e) applies, and (2) that it is in the best interest of the child based on the factors enumerated in R.C. 2151.414(D)(1). *See* R.C. 2151.414(B)(1); *In re P/W Children*, 1st Dist. Hamilton No. C-200103, 2020-Ohio-3513, ¶ 29. Before the juvenile court grants permanent custody as an original disposition to an agency that filed a motion under R.C. 2151.27(C), the juvenile court must determine (1) that the child cannot be placed with either parent within a reasonable time or should not be placed with the parent, using the factors set forth in R.C. 2151.414(E), and (2) that permanent custody is in the best interest of the child based on the factors set forth in R.C. 2151.414(D)(1). *See* R.C. 2151.353(A)(4); *In re P/W Children* at ¶ 29.

### A. *Cannot or Should Not Be Placed with a Parent*

{**¶32**} In this case, HCJFS requested permanent custody as an original disposition. *See* R.C. 2151.27(C) and 2151.353(A)(4). The juvenile court applied the framework set forth in R.C. 2151.353(A)(4) for evaluating permanent custody as an original disposition pursuant to HCJFS's request under R.C. 2151.27(C), and determined in accordance with R.C. 2151.414(E) that the child cannot and should not be placed with either parent.

{**¶33**} The court determined in accordance with R.C. 2151.414(E)(1) that mother failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the home. The court found that mother minimally complied with her case-plan services despite repeated attempts by HCJFS

to engage her. The court also found that mother missed four out of 10 scheduled visits with the child and admitted to recent marijuana use.

**{¶34}** In addition, the court determined in accordance with R.C. 2151.414(E)(11) that mother's parental rights were involuntarily terminated with respect to S.G.'s sibling. Mother does not dispute that finding. Therefore, mother had the burden to show that she could provide a legally secure permanent placement and adequate care for S.G. R.C. 2151.414(E)(11); *In re H.R.H*, 1st Dist. Hamilton No. C-200071, 2020-Ohio-3160, ¶ 18. The juvenile court determined that mother failed to meet this burden because she failed to make significant progress in her case plan and otherwise demonstrated a lack of commitment to the child.

**{¶35}** Therefore, we hold that the court's finding that the child could not or should not be placed with either parent was supported by clear and convincing evidence.

### B. Best Interest of the Child

**{¶36}** In determining whether permanent custody is in a child's best interest, the juvenile court must consider all relevant factors, including: (a) the child's interaction with parents, siblings, relatives, foster caregivers and out-0f-home providers, and any other person who may significantly affect the child; (b) the child's wishes; (c) the custodial history of the child; (d) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors under R.C. 2151.414(E)(7) to (E)(11) apply. *See* R.C. 2151.414(D)(1)(a)-(e) and 2151.353(A)(4).

**{¶37}** With respect to the child's interaction with significant others, the court found that mother has only seen S.G. six times since the child's birth. The court found that S.G. is bonded to her foster family and that all of her needs are being met

in the foster home, and that the foster family is interested in adopting both S.G. and her sibling. *See* R.C. 2151.414(D)(1)(a). The court noted that the child's guardian ad litem supported a grant of permanent custody. *See* R.C. 2151.414(D)(1)(b). In considering the custodial history, the court noted that the child had been in foster care since her birth in September 2019. *See* R.C. 2151.414(D)(1)(c). The court found that a legally secure permanent placement could not be achieved without a grant of permanent custody because mother was not compliant with her case-plan services. *See* R.C. 2151.414(D)(1)(d). Finally, the court noted that the factor in R.C. 2151.414(E)(11) applied because mother had her parental rights involuntarily terminated with respect to S.G.'s sibling. *See* R.C. 2151.414(D)(1)(e).

**{¶38}** Following our review of the record, we hold that the juvenile court's determination that S.G. could not and should not be placed with mother within a reasonable time and that S.G.'s best interest is served by a grant of permanent custody is supported by clear and convincing evidence, and is not against the manifest weight of the evidence. Therefore, we overrule mother's sixth assignment of error.

## VI. Conclusion

**{¶39}** Consequently, we overrule mother's assignments of error and affirm the judgment of the juvenile court granting permanent custody of S.G. to HCJFS.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:
> The court has recorded its own entry this date.

14