**[Cite as *In re M.H.*, 2024-Ohio-1548.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| IN RE: M.H. AND B.H. | : | APPEAL NO. C-240002 |
| | | TRIAL NO. F15-2394Z |
| | : | |
| | : | *O P I N I O N.* |


Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 24, 2024


*Treleven & Klingensmith, LLC*, and *John D. Treleven*, for Appellant Mother,

*Kimberly V. Thomas*, for Appellee Father,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *J. Michael Massie*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan E. Busam*, Assistant Public Defender, for Appellee Guardian ad Litem for the minor children,

*James Costin*, for Appellees M.H. and B.H.

**WINKLER, Judge.**

{¶1} In this parental-termination appeal, appellant mother appeals the juvenile court's decision terminating her parental rights and granting permanent custody of her minor children M.H. and B.H. to the Hamilton County Department of Job and Family Services ("HCJFS"). Mother argues in one assignment of error that the juvenile court's order was against the manifest weight of the evidence and that the juvenile court erred by relying on hearsay evidence. For the following reasons, we overrule the assignment of error and affirm the judgment of the juvenile court.

## Factual and Procedural Background

{¶2} This case began when police officers responded to a Walmart store where M.H. and B.H. had been found left alone in a shopping cart. The children were found dirty and had head lice. That day, father was charged with criminal trespass and was incarcerated during the litigation. Both parents admitted to consuming fentanyl two to three times a week and father admitted to consuming fentanyl that day. The parents also reported they brought M.H. and B.H. along when acquiring fentanyl.

{¶3} The next day, HCJFS filed a complaint for temporary custody of B.H. and M.H. and received interim custody the following day. On November 8, 2021, the juvenile court adjudicated the children dependent and neglected and placed them in the agency's temporary custody. While the case was pending, HCJFS assigned a caseworker, the parents were enrolled in case-plan services, and B.H. and M.H. were placed in a foster family. The parents were to complete case-plan services: submit to a diagnostic assessment and follow all recommendations to obtain and maintain sobriety, complete random toxicology screens, participate in parenting classes, engage in regular visitation with the children, continue with their methadone treatment or

complete substance-abuse treatment, obtain and maintain stable housing and employment, and refrain from criminal activity.

{¶4} Mother entered a 26-week residential addiction-treatment program. She checked herself out after 90 days so that she could work and earn an income. Mother continued to treat her addiction with a methadone prescription and outpatient therapy, but HCJFS was not able to confirm her treatment. While working, mother and father each earned an income, but did not provide requested income documentation to HCJFS. The parents lived in hotels together until they were able to stay as caretakers for a two-bedroom apartment that belonged to a friend of mother's while that friend was away caring for a sick family member. However, mother and father were not listed as tenants on the lease and only stayed as guests of mother's friend.

{¶5} Mother kept up communication with B.H. and M.H.'s foster parents but struggled to maintain communication with her HCJFS caseworker. Over the pendency of the case, the caseworker scheduled mother for 20 to 40 drug screens to confirm her sobriety, but mother did not attend a single screening, despite knowing the agency's policy that a missed screening is considered as having tested positive. The caseworker referred the parents to parenting classes which, after a few false starts, they successfully completed. Meanwhile, B.H. and M.H. bonded with their foster family while remaining bonded with each other and their parents. Though M.H. was too young to express her interests, B.H. was appointed independent counsel and indicated she does not wish to return to mother and that she knows that she was removed from mother's care because of her drug use.

{¶6} On July 22, 2022, less than 12 months into temporary custody, HCJFS filed a motion to modify the temporary custody to permanent custody. A trial occurred before a magistrate on January 31, 2023, where the only witness testifying was the assigned HCJFS caseworker. The magistrate admitted B.H.'s and M.H.'s medical records but did not admit three exhibits documenting the parents' drug screens taken at their methadone clinic because those exhibits were not authenticated. On April 5, the magistrate granted permanent custody of M.H. and B.H. to HCJFS.

{¶7} Mother and father each filed objections to the magistrate's decision. Because of scheduling issues, the juvenile court did not hear the objections until August 10, so the guardian ad litem moved for the juvenile court to take additional evidence, which the court granted, continuing the matter for an evidentiary hearing. On October 2, the juvenile court heard additional testimony from the assigned HCJFS caseworker, and mother testified for the first time. On November 28, the juvenile court denied the objections and adopted the magistrate's decision terminating both parents' parental rights and granting permanent custody of M.H. and B.H. to HCJFS.

{¶8} Mother now timely appeals, raising one assignment of error with two issues presented for review. Father did not appeal.

### Law and Analysis

{¶9} Mother raises one assignment of error, arguing that the juvenile court erred as a matter of law in granting HCJFS's motion for permanent custody because the decision was against the manifest weight of the evidence and the juvenile court relied almost exclusively on hearsay evidence in making that decision. Because mother's argument about the use of hearsay evidence implicates the weight of the

evidence supporting the juvenile court's decision, we address mother's arguments in reverse order.

### *I. Use of hearsay evidence*

**{¶10}** First, we address mother's argument that that the trial court committed plain error when it relied on inadmissible hearsay in granting the motion for permanent custody. Mother argues that the juvenile court relied on hearsay testimony provided by the HCJFS caseworker to establish all the factual findings other than mother's housing and income and that such reliance on a "caseworker-only" trial affected the basic fairness, integrity, or public reputation of the judicial process because the magistrate blindly believed HCJFS reported all this hearsay truthfully.

**{¶11}** Mother did not make any hearsay objection to the testimony during the dispositional hearing before the magistrate or in her objections to the magistrate's decision before the juvenile court. As such, appellate review is confined to plain error. *See* Juv.R. 40(D)(3)(b)(iv). Plain error in the civil context is "generally disfavored, however, and applied only in situations in which 'error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process.' " *In re J.W.*, 1st Dist. Hamilton No. C-190189, 2019-Ohio-2730, ¶ 7, quoting *In re Etter*, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997).

**{¶12}** The Ohio Rules of Juvenile Procedure take a unique view on the role of hearsay evidence in dispositional hearings. Ordinarily, Juv.R. 34(B)(2) allows the juvenile court in a dispositional hearing to "admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence."

However, Juv.R. 34(I) provides "the Rules of Evidence shall apply in hearings on motions for permanent custody." Reading these two rules together, hearsay is inadmissible in the juvenile court's dispositional hearing for permanent custody of M.H. and B.H. unless it falls within a recognized exception to the hearsay rule. *See In re Z.*, 1st Dist. Hamilton No. C-190026, 2019-Ohio-1617, ¶ 10.

{¶13} Additionally, the erroneous admission or exclusion of hearsay is not necessarily a reversible error. *In re J.G.S.*, 1st Dist. Hamilton Nos. C-180611 and C-180619, 2019-Ohio-802, ¶ 32. Where the complained-of testimony is cumulative to properly admitted testimony, the error is harmless and does not prejudice the outcome. *See In re J.H.*, 1st Dist. Hamilton No. C-210277, 2021-Ohio-2922, ¶ 39, quoting *In re P.C.*, 3d Dist. Logan Nos. 8-20-39, 8-20-40, 8-20-41, 8-20-45, 8-20-46 and 8-20-47, 2021-Ohio-1238, ¶ 68. The need for prejudice is heightened on plain-error review because the erroneous admission or exclusion of evidence must affect "the basic fairness, integrity, or public reputation of the judicial process" to rise to plain error. *See, e.g., Tyra v. Tyra*, 1st Dist. Hamilton No. C-140211, 2014-Ohio-5732, ¶ 8 (use of hearsay in trial-by-affidavit deprived pro se party of a fair trial because the magistrate abdicated his role to ensure only competent evidence was admitted, deprived a party of the right to cross-examination, and the affidavit was technically deficient).

{¶14} Here, mother does not point to specific testimony that is inadmissible hearsay. Instead, mother argues generally that all the juvenile court's factual findings other than mother's housing and income were proven with hearsay testimony. The testimony presented to the magistrate and the juvenile court falls into three categories:

(1) cumulative to mother's own testimony at the objections hearing, (2) admissions by mother herself to the HCJFS caseworker, or (3) does not rise to the level of plain error.

{¶15} First, much of the HCJFS caseworker's testimony that mother argues is inadmissible was cumulative to Mother's later testimony in the objections hearing. Where the complained-of testimony is cumulative to properly admitted testimony, the error is harmless and does not prejudice the outcome. *See In re J.H.* at ¶ 39, quoting *In re P.C.* at ¶ 68. In the objections hearing, mother testified that she left her 26-week residential sobriety-treatment program after 90 days so she could work and earn an income. Mother testified that she had the transaction history reflecting her self-employment but that she does not know why she never provided those records to the HCJFS caseworker. Mother testified that the HCJFS caseworker referred her to 20 to 30 drug screens, that she had not attended one, and that she knew the agency's policy that a missed drug screen was treated as testing positive. Consequently, mother cannot be prejudiced by the hearsay testimony on these facts or the factual findings and legal conclusions the juvenile court made from these facts.

{¶16} Second, the HCJFS caseworker's testimony included mother's own statements. Evid.R. 801(D)(2)(a) provides that a statement is not hearsay if it "is offered against a party" and is "the party's own statement." Mother is a "party" for purposes of a permanent-custody hearing. *See* Juv.R. 2(Y) (defining "party" to include the parent of a child who is the subject of a juvenile court proceeding); *In re S.G.*, 1st Dist. Hamilton No. C-200261, 2020-Ohio-5244, ¶ 24. Consequently, when the HCJFS caseworker offered mother's own statements against her in the permanent-custody hearing before the magistrate, those statements were admissible as nonhearsay

statements under Evid.R. 801(D)(2)(a) and there was no error in allowing them. *See In re S.G.* at ¶ 24.

{**¶17**}   To the extent that the HCJFS caseworker offered statements by non-parties, those statements do not rise to the level of plain error. The caseworker testified about multiple referrals that were unsuccessful, such as drug screens, parenting classes, and mental-health and behavioral treatment. In these instances, the caseworker is testifying to her own personal knowledge of mother's completion of case-plan services and whether the caseworker received certain documents from the referred service providers. These statements about what those service providers told the caseworker include both hearsay statements and the HCJFS caseworker's own personal knowledge. While that testimony is prejudicial to mother, the hearsay portion of the testimony is not prejudicial to the point that it affected the "basic fairness, integrity, or reputation of the judicial process" needed to amount to plain error. *See In re A.W.*, 1st Dist. Hamilton No. C-220523, 2023-Ohio-387, ¶ 30.

{**¶18**}   Consequently, the juvenile court did not commit plain error in relying on the HCJFS caseworker's testimony.

### II. Manifest weight of the evidence

{**¶19**}   Second, we address mother's argument that the juvenile court's decision was against the manifest weight of the evidence. Under a manifest-weight-of-the-evidence challenge, an appellate court reviews whether the juvenile court's determination on a motion for permanent custody is supported by clear and convincing evidence. *In re R.B.*, 1st Dist. Hamilton Nos. C-190319 and C-190331, 2019-Ohio-3469, ¶ 9. A reviewing court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trial

court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered. *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 16. A reviewing court will not reverse a juvenile court's decision on appeal where the court "correctly applied the best-interests test and where its custody decision was amply supported by competent evidence in the record." *In re Allah*, 1st Dist. Hamilton No. C-040239, 2005-Ohio-1182, ¶ 11.

{¶20} To support a grant of permanent custody by motion, the juvenile court must determine (1) the child cannot be placed with either parent within a reasonable time or should not be placed with a parent, using the factors set forth in R.C. 2151.414(E), and (2) that permanent custody is in the best interest of the child based on the factors set forth in R.C. 2151.414(D)(1). R.C. 2151.414(B).

### A. The first prong—whether the child cannot or should not be placed with a parent.

{¶21} The first prong of the permanent-custody test requires the juvenile court to analyze 11 distinct factors to determine whether a child cannot or should not be placed with a parent. R.C. 2151.414(E). Where the court finds that just one of the R.C. 2151.414(E) factors exists by clear and convincing evidence, the first prong is satisfied. *In re L Children*, 1st Dist. Hamilton No. C-220601, 2023-Ohio-1346, ¶ 16. Here, the record clearly and convincingly supports three factors supporting the juvenile court's finding that M.H. and B.H. could not be placed with either parent within a reasonable time or should not be placed with either parent.

{¶22} First, the juvenile court concluded that because the parents did not consistently engage with the agency to complete case-plan services, the parents failed

9

continuously and repeatedly to substantially remedy the conditions causing M.H. and B.H. to be placed outside the children's home under R.C. 2151.414(E)(1). M.H. and B.H. were removed from their home because of concerns about both parents' substance abuse. The record demonstrates that both parents suffer from substance abuse and consumed fentanyl in the presence of the children. As part of the case-plan services, mother was to, among other things, follow all recommendations to obtain and maintain sobriety, complete random toxicology screens, and either continue with her methadone treatment or complete substance-abuse treatment. Mother reported she was prescribed methadone throughout the case though mother checked herself out of inpatient therapy so that she could earn an income. Mother testified to engaging in methadone treatment, however HCJFS was not able to confirm her treatment progress. Mother did not complete any drug screens though HCJFS referred her to 20 to 40 screenings. She testified that she does not know why she did not complete any drug screens, except that she "had a lot going on." Mother testified that she received drug screening at her methadone clinic but did not provide any documentation of the results.

{¶23} Second, the juvenile court concluded that under R.C. 2151.414(E)(2), the parents "have a chemical dependency that is so severe that it makes the parent unable to provide an adequate permanent home for the [children] both at the present time and within one year after the hearing." Both parents have a history of substance abuse and have consumed fentanyl in the presence of the children. Over the course of providing case-plan services, HCJFS referred mother to 20 to 40 drug screens and mother did not complete one, despite testifying she knew the agency considers an incomplete drug screen as having a positive result. Mother received methadone

treatment and attended therapy, but HCJFS was not able to confirm mother's treatment and she has not completed a treatment program.

{¶24} Third, the juvenile court concluded that under R.C. 2151.414(E)(4), mother "demonstrated a lack of commitment towards the [children] by failing to regularly support, visit, or communicate with the children when able to do so or by other actions showing an unwillingness to provide an adequate permanent home for the children." For this factor, the juvenile court again relied on mother's inconsistent involvement with case-plan services. The parents were to submit to a diagnostic assessment and follow all recommendations to obtain and maintain sobriety, complete random toxicology screens, participate in parenting classes, engage in regular visitation with the children, continue with their methadone treatment or complete substance-abuse treatment, obtain and maintain stable housing and employment, and refrain from criminal activity. While the parents completed parenting classes, they did not participate in the numerous drug screens requested and provided no explanation for not participating, despite the agency moving the location of the drug screens and subsidizing parents' transportation. Mother received methadone treatment throughout the case though mother checked herself out of inpatient therapy so that she could earn an income. Mother has not signed a release of information to allow HCJFS to confirm her treatment.

{¶25} Each of these findings clearly and convincingly supports the juvenile court's decision that M.H. and B.H. cannot be placed with mother within a reasonable time or should not be placed with mother.

### B. The second prong—whether permanent custody is in the best interest of the children.

{¶26} Once the court has determined a child cannot be returned to a parent within a reasonable time or should not be returned to a parent, the second prong of the permanent-custody test requires the juvenile court to determine whether permanent custody is in the best interest of the child in accordance with R.C. 2151.414(D). *See* R.C. 2151.353(A)(4). R.C. 2151.414(D)(1) requires the juvenile court to consider "all relevant factors" analyzing the best interest of the child, including among other things:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * ; and
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]

*In re Y.H.*, 1st Dist. Hamilton No. C-230472, 2023-Ohio-4554, ¶ 51. Here, the record clearly and convincingly supports the juvenile court finding multiple statutory best-interest factors applied.

{¶27} Under R.C. 2151.414(D)(1)(a), the juvenile court assessed "the interaction and interrelationship of the [children] with the [children's] parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the [children]." M.H. and B.H.'s independent counsel reported that while M.H. and B.H. are bonded with their parents and love them, they are also bonded with their foster parents, foster sister, and each other. The foster parents have expressed an interest in adopting M.H. and B.H. The HCJFS caseworker testified that the parents remained at the highest level of supervision during visitation. Having reviewed the record, we hold the juvenile court did not err in this finding or by weighing it in favor of the grant of permanent custody to HCJFS.

{¶28} Under R.C. 2151.414(D)(1)(b), the juvenile court assessed "the wishes of the [children], as expressed directly by the child or through the guardian ad litem or independent counsel." B.H., at nine years old, and M.H., at seven years old, were appointed independent counsel. The independent counsel reported that B.H. indicated she did not wish to return to the parents and knew that they could not return to their parents because of their drug use. However, M.H. was too young to express her wishes and did not have a full understanding of why she was not with their parents. The guardian ad litem recommended granting permanent custody to the agency. Having reviewed the record, we hold the juvenile court did not err in this finding or by weighing it in favor of the grant of permanent custody to HCJFS.

{¶29} Under R.C. 2151.414(D)(1)(c), the juvenile court assessed the custodial history of the children. At the time of the July 2022 motion for permanent custody, the children had been in the temporary custody of HCJFS since October 25, 2021, less than 12 months of the previous consecutive 22-month period. However, because of

scheduling delays, the children were in the agency's custody for about three years by the time the juvenile court issued its decision. Having reviewed the record, we hold the juvenile court did not err in this finding or by weighing it in favor of the grant of permanent custody to HCJFS.

{¶30} Under R.C. 2151.414(D)(1)(d), the juvenile court assessed the children's "need for a legally secure placement and whether that placement can be achieved without a grant of permanent custody." The parents have ongoing, untreated, mental-health and substance-abuse issues and have failed to engage consistently with HCJFS, though they completed parenting classes. A parent's failure to complete case-plan services "indicates a parent's inability to provide a legally secure permanent placement." *See In re A.M.Z.*, 1st Dist. Hamilton Nos. C-190292, C-190317 and C-190326, 2019-Ohio-3499, ¶ 9 (parents completed parenting classes, but did not cooperate with toxicology screens or other case-plan services). The juvenile court concluded from the parents' failure to complete treatment, obtain permanent housing, and prove consistent income that they are incapable of providing a secure permanent placement.

{¶31} M.H. and B.H. both have particular needs as both children have been diagnosed with an unspecified trauma and stressor-related disorder, rule-out anxiety disorder, speech and language disability, and nocturnal enuresis. Additionally, M.H. has been diagnosed with attention deficit hyperactivity disorder. Both children engage in therapy and have been doing well in school. Neither parent has attended any of the children's medical appointments, despite receiving gas cards from the agency to aid in transportation. The juvenile court explored alternatives to granting permanent custody to HCJFS but found no other acceptable relatives. Having reviewed the

record, we hold the juvenile court did not err in this finding or by weighing it in favor of the grant of permanent custody to HCJFS.

{¶32} Mother argues that the HCJFS caseworker's testimony should be given lesser weight because the agency did not introduce documentary evidence to corroborate the testimony. However, a lack of corroborating documents does not mean sworn testimony is not competent, credible evidence. The HCJFS caseworker's testimony was largely uncontradicted except mother testified she did sign a release of information at her methadone clinic. Thus, the caseworker's testimony supported the juvenile court's decision in all respects other than whether mother signed releases for HCJFS to confirm her progress.

{¶33} For whether mother signed releases to allow sharing her information with HCJFS, the juvenile court had to resolve conflicting testimony between mother and the caseworker as there was no admissible documentary evidence to corroborate mother's testimony. In assessing the juvenile court's decision to credit the HCJFS caseworker's testimony over mother's, we must "be mindful of the presumption in favor of the finder of fact." *See In re S & W*, 1st Dist. Hamilton Nos. C-230110 and C-230122, 2023-Ohio-2210, ¶ 12, quoting *In re A.W.*, 1st Dist. Hamilton No. C-220248, 2022-Ohio-3715, ¶ 20. The presumption reflects that the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988), citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). The juvenile court heard both the HCJFS caseworker and mother testify in the objections hearing and believed the caseworker

that mother had not completed the releases for the agency to confirm her treatment progress and it did not lose its way reaching that conclusion.

## Conclusion

**{¶34}** Because the juvenile court's decision was not against the manifest weight of the evidence and the juvenile court did not commit plain error in admitting certain hearsay statements, we overrule the sole assignment of error. Consequently, we affirm the judgment of the juvenile court.


Judgment affirmed.


**BOCK, P.J.**, and **BERGERON, J.,** concur.

Please note:
    The court has recorded its entry on the date of the release of this opinion.