[Cite as *In re L. Children*, 2023-Ohio-1346.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: THE L CHILDREN | : | APPEAL NO. C-220601 |
| | | TRIAL NO. F07-0701-Z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 26, 2023

*Angela J. Glaser,* for Appellant Mother,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Klarysa Benge*, Assistant Public Defender, for Appellee Guardian ad Litem.

**CROUSE, Presiding Judge.**

{¶1}  Mother appeals from the Hamilton County Juvenile Court's judgment granting permanent custody of three of her children to the Hamilton County Department of Job and Family Services ("HCJFS"). In a single assignment of error, mother contends that the juvenile court's permanent-custody determination is based on insufficient evidence and against the manifest weight of the evidence. After a thorough review of the record, we affirm the judgment of the juvenile court.

## I. Factual and Procedural History

{¶2}  On December 24, 2018, mother gave birth to A.L.1. On December 26, HCJFS filed, and the court granted, an ex parte emergency order for custody based on mother's previously-terminated parental rights one year prior.[1] On December 27, HCJFS filed a motion for an interim order of temporary custody, a motion for a determination that reasonable efforts were not required,[2] and a complaint for permanent custody. HCJFS supported its filings with facts that alleged that mother had a history with HCJFS, had been convicted of endangering children as a result of driving under the influence with a child in the car, had previous children removed from her care, and had untreated mental-health issues. Mother did not contest the request for interim custody. After a hearing, the magistrate granted the interim order of custody and the motion for no reasonable efforts. On April 4, 2019, the magistrate

---

[1] On June 19, 2017, mother had her parental rights terminated with respect to two of her older children. That entry notes that she had two more children in the legal custody of maternal grandmother at that time.

[2] R.C. 2151.419(A)(2) provides that a court "shall make a determination that the [children services] agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home" if the parent "has had parental rights involuntarily terminated with respect to a sibling of the child." Given mother's prior termination of parental rights, the court was required to make this finding.

adjudicated A.L.1 dependent. At the time of the adjudication, mother was incarcerated.

{¶3} The case continued to the dispositional phase in June 2019. HCJFS sought permanent custody, but on June 10, the court ordered temporary custody. This provided mother the opportunity to participate in case-plan services, including supervised visitation, an updated assessment with Family Access for Integrated Resources ("FAIR"), a domestic-violence assessment, and parenting classes. On November 1, 2019, HCJFS filed a motion to modify temporary custody to permanent custody.

{¶4} On November 9, 2019, A.L.2 was born. HCJFS subsequently filed an ex parte emergency order for custody, a motion for an interim order of temporary custody, and a complaint for permanent custody. The magistrate granted interim custody. HCJFS filed an amended complaint for permanent custody on December 4, 2019. A series of continuances then occurred due to COVID-19 and other issues. The adjudication-and-disposition hearing for A.L.2 was set to take place on March 17, 2021.

{¶5} On December 16, 2020, A.L.3 was born. Days later, HCJFS filed a motion for an interim order of temporary custody and a "Second Amended Complaint for Permanent Custody," that added A.L.3 to the previously-filed permanent-custody complaint in the case of A.L.2. The court granted the motion for interim custody.

{¶6} On March 17, 2021, HCJFS filed a motion to dismiss the December 2020 complaint due to the timing requirements of R.C. 2151.35(B)(1), along with a new complaint for permanent custody, and a motion for an interim order of temporary custody. The magistrate again granted interim custody.

{¶7} On June 22, 2021, A.L.2 and A.L.3 were adjudicated dependent. Mother stipulated to the factual basis of the dependency determination. At this hearing, the parties agreed that the dispositional hearings for all three children would be held together. After more scheduling delays and continuances, the court held the disposition hearing on June 14, 2022. At the hearing, the court considered HCJFS's motion to modify temporary custody to permanent custody with respect to A.L.1, and its complaint for permanent custody of A.L.2 and A.L.3. Mother and Taliah Barkley, an HCJFS caseworker, testified.

{¶8} On July 8, 2022, the magistrate entered a decision granting permanent custody of all the children to HCJFS. In his decision, the magistrate found that clear and convincing evidence established that the children could not be placed with mother or their respective fathers within a reasonable time, or should not be placed with them, and that permanent custody was in the children's best interest. Mother timely objected, as did the father of A.L.2 and A.L.3, D.D. Shortly after filing her objections, mother was convicted of charges related to trafficking in and possession of fentanyl and was sentenced to 18 months' incarceration. D.D. was incarcerated at that time as well. On October 24, 2022, the court denied the objections and adopted the decision of the magistrate.

{¶9} Mother timely appealed. In one assignment of error, Mother contends that the juvenile court's judgment is based on insufficient evidence and against the manifest weight of the evidence.

## II. Analysis

{¶10} There are two ways HCJFS may obtain permanent custody of a child: "(1) the agency may first obtain temporary custody of the child and then file a motion

for permanent custody under R.C. 2151.413, or (2) the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint under R.C. 2151.27(C)." *In re P/W Children*, 1st Dist. Hamilton No. C-200103, 2020-Ohio-3513, ¶ 28, citing *In re R.B.,* 1st Dist. Hamilton Nos. C-190319 and C-190331, 2019-Ohio-3469, ¶ 10.

{¶11} To modify temporary custody to permanent custody, as HCJFS sought to do with A.L.1, the court must look to the two-prong test of R.C. 2151.414(B)(1). *See In re P/W Children* at ¶ 29. The first prong requires the court to find by clear and convincing evidence that one of the factors in R.C. 2151.414(B)(1)(a) through (e) applies. The second prong requires the court to find, also by clear and convincing evidence, that permanent custody is in the best interest of the child considering "all relevant factors," including those set forth in R.C. 2151.414(D)(1)(a)-(e).

{¶12} To grant permanent custody as part of an original disposition, as HCJFS sought to do with A.L.2 and A.L.3, the court must determine "(1) that the child cannot be placed with either parent within a reasonable time or should not be placed with the parent, using the factors set forth in R.C. 2151.414(E), and (2) that permanent custody is in the best interest of the child based on the factors set forth in R.C. 2151.414(D)(1)." *In re P/W Children* at ¶ 29, citing *In re R.B.* at ¶ 11, citing R.C. 2151.353(A)(4), and *In re T.K.K.,* 12th Dist. Butler No. CA2012-01-008, 2012-Ohio-3203, ¶ 22.

{¶13} Under both approaches, a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent can satisfy the first prong. *See* R.C. 2151.414(B)(1)(a) and 2151.353(A)(4). Both approaches also require a best-interest analysis pursuant to R.C. 2151.414(D)(1) under the second prong.

{¶14}  When we review the sufficiency of the evidence supporting a grant of permanent custody, we "tak[e] a fresh look at the evidence to see whether it clearly and convincingly supports the court's decision." *In re M/E*, 1st Dist. Hamilton No. C-200349, 2021-Ohio-450, ¶ 8, citing *In re C. Children*, 1st Dist. Hamilton Nos. C-190650 and C-190682, 2020-Ohio-946, ¶ 8. Clear and convincing evidence " 'produce[s] in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' " *In re L.H.*, 1st Dist. Hamilton No. C-220161, 2022-Ohio-2755, ¶ 38, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). "[W]e accept the trial court's factual determinations if they are supported by 'some competent and credible evidence.' " *In re M/E* at ¶ 8, quoting *In re W.W.,* 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46.

{¶15}  When we review the manifest weight of the evidence, we consider "whether the trial court lost its way and created such a manifest miscarriage of justice in resolving conflicts in the evidence that its judgment must be reversed." *In re P/W Children*, 1st Dist. Hamilton No. C-200103, 2020-Ohio-3513, at ¶ 27.

{¶16}  To determine whether the children "cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence." R.C. 2151.414(E). Where the court finds that even one of the R.C. 2151.414(E) factors exists by clear and convincing evidence, that prong is satisfied. *See In re A.H.,* 1st Dist. Hamilton Nos. C-200065 and C-200086, 2020-Ohio-3102, ¶ 23. Mother does not set forth an argument disputing the court's conclusion under R.C. 2151.414(E).

{¶17}  The court found that the children could not be placed with mother within a reasonable time or should not be placed with her due to mother's frequent

aggressive behavior with HCJFS staff and others (R.C. 2151.414(E)(1) and (2)), and her failure to regularly visit with the children (R.C. 2151.414(E)(4)). Additionally, mother does not dispute that she has had her parental rights involuntarily terminated with respect to two other children, and that she was serving an 18-month prison sentence at the time the court entered final judgment. *See* R.C. 2151.414(E)(11) - (13). Each of these findings clearly and convincingly support the court's determination that the children cannot or should not be placed with mother.

{¶18} The record also supports the court's finding that the children could not be placed with either of their fathers. The court found, among other factors, that J.M., the father of A.L.1, had abandoned A.L.1 (R.C. 2151.414(E)(10)), and that D.D., the father of A.L.2 and A.L.3, was incarcerated during a significant portion of the proceedings, including disposition (R.C. 2151.414(E)(12) and (13)). Mother does not dispute these findings.

{¶19} Next, the court must determine whether permanent custody is in the best interest of the children, considering "all relevant factors," including those set forth in R.C. 2151.414(D)(1). Those factors include:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers * * * and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child,

* * *

7

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶20} Regarding R.C. 2151.414(D)(1)(a), the record demonstrates that A.L.1 and A.L.3 are happy in maternal grandmother's home, and are bonded with her and the other children in the home. Maternal grandmother is willing to adopt the children. A.L.2 has been with the same foster placement since birth and is bonded with the foster family. The foster family is interested in adopting A.L.2. Mother contends that there was no evidence presented regarding A.L.2's contact with his siblings, given his placement outside of maternal grandmother's home. While this may be relevant, we find that the trial court properly considered R.C. 2151.414(D)(1)(a) and the record supported its findings.

{¶21} Regarding R.C. 2151.414(D)(1)(b), the court found that the children, at ages four, three, and two at the time of disposition, were too young to express their wishes. This is consistent with this court's approach in similar cases. *See In re P. & H.*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 38 ("With due consideration given to their ages [four and seven], the R.C. 2151.414(D)(1)(b) factor is of minimal value in determining their best interests."). Moreover, the children's guardian ad litem ("GAL") supports the grant of permanent custody to HCJFS. While mother argues that the GAL did not observe any of her visits with the children, the GAL's recommendation was based on discussions with the caseworkers, the foster parents, and the children, in addition to a review of mother's visit reports.

8

{¶22} With respect to R.C. 2151.414(D)(1)(c), the custodial history of the children, the court found that the children have been in HCJFS's custody for nearly their entire lives. This finding is supported by the record as mother has never had custody of the children.

{¶23} Turning to R.C. 2151.414(D)(1)(d), the court found that a legally secure placement could only be achieved by granting permanent custody to HCJFS, principally due to mother's and D.D.'s incarceration. A parent's incarceration is certainly a relevant consideration under this factor and the factual basis of this finding is not in dispute. *See In re L.R.D.*, 2019-Ohio-178, 128 N.E.3d 926, ¶ 36 (8th Dist.) (holding that the incarceration of the parents was sufficient to establish that a legally secure placement could not be achieved without a grant of permanent custody to the children services agency); *In re L.G.*, 7th Dist. Belmont No. 20 BE 0006, 2020-Ohio-6831, ¶ 59 (holding mother's incarceration during dispositional hearing was reasonable consideration under this section).

{¶24} Other evidence in the record and relied on by the trial court included testimony about mother's aggressive behavior. For instance, Barkley testified that in the fall of 2021 she visited mother for a home visit, but mother got very upset and began to yell at her. When Barkley left, mother came out to her car and continued to yell at her and claimed that Barkley was stalking and harassing her. Eventually mother called 9-1-1 on Barkley, prompting police to intervene. Barkley was then directed by agency staff to no longer meet with mother at her home. Barkley also testified about two requests from the Family Nurturing Center to move mother's supervised visits with the children to HCJFS so that sheriff's officers could be present. After the first move to HCJFS in December 2021, the visits transitioned back to the Family

Nurturing Center after four successful visits. However, visits were again moved back to HCJFS around April 2022, after mother got into an argument at the Family Nurturing Center with D.D.'s ex-girlfriend. Mother testified that her children were not present, but that security was involved because the situation escalated to a chaotic argument in the lobby.

{¶25} The record also reveals a history of domestic violence between mother and D.D., whom she married in February 2022. For example, Barkley testified that after completing the domestic-violence assessment as part of her case plan, mother shared videos to Facebook of her and D.D. fighting, using explicit language and making physical threats of violence towards one another. Mother has also reported that D.D. had pointed a gun at her on several occasions, as recently as 2020.

{¶26} While mother argues that she was never given a chance to provide a legally secure placement, her aggressive behavior towards HCJFS staff and others throughout the pendency of the case casts doubt on her ability to do so, and supports the court's decision to grant permanent custody to HCJFS. *See, e.g., In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶ 95 (holding parents were unable to provide a legally secure placement where the record demonstrated the parents were not emotionally stable, could not grasp parenting concepts, and mother was not truthful in mental-health evaluations).

### III. Conclusion

{¶27} Based on our review of the record and the juvenile court's analysis, we hold that the court's judgment was supported by sufficient evidence and was not against the manifest weight of the evidence. The court made the required findings, and

the record clearly and convincingly supports the court's determination. Where conflicts in the evidence did arise, the court did not lose its way in resolving them.

{¶28} Thus, we overrule mother's sole assignment of error and affirm the judgment of the juvenile court.

Judgment affirmed.

**ZAYAS** and **KINSLEY, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.